I'm sorry to ask, but I haven't used this timer before. Am I supposed to start? Yes. The timer will run down, and you'll have a green light until you get to two minutes, and you'll get a yellow light. Then the red light comes on, you'll go to zero, and then the clock starts back up. And when the red light's on, it's telling you how much time you're over your time limit. Thank you. May it please the Court, my name is Sarah O'Connell. I am pro bono counsel for Luz Lopez-Rodriguez and Fabiola Gastelum-Lopez. I'd like to reserve four minutes of my time for rebuttal. These two women, who have no criminal records, are here today advancing four claims. A finding for them on any one of the four claims should result in a termination of their deportation proceedings against Fabiola, and a finding of three of the four should result in a termination of deportation proceedings against Luz. The first claim is for a violation of Regulation 287.8C. This regulation states that a warrant of arrest shall be obtained, except when an immigration officer has reason to believe that a person is likely to escape before a warrant can be obtained. For Fabiola, there is no warrant in the record for her arrest, and there is no evidence that she would be likely to escape before a warrant could be obtained. As for Luz, there is no warrant in effect at the time of her arrest. The I-213 form describing Luz's arrest says that agents entered her home because they were given consent to enter by Fabiola. There is a warrant in the record, but the time on the warrant is many hours after the actual arrest took place. Therefore, it was not in effect at the time of the arrest. There is no evidence in the record that she was likely to escape before a warrant could be obtained before her arrest. Therefore, the regulation was violated regarding both of the women. This violation should result in a termination of the deportation proceeding. Counsel, what do you do with Section 287.12? That section provides that these regulations are not intended to, shall not be construed to, and may not be relied upon to create any right substantive or procedural enforceable at law by any party in any matter civil or criminal. Well, we're not creating new rights. We're just saying that the regulation was violated. There's a two-prong test, and case law sets out a two-prong test for when a regulation is violated. I don't think this particular regulation was in force. The case that you're referring to is the Garcia Flores case? Yes. I don't think this particular regulation was enforced, but this regulation suggests that these regulations are not intended to create any rights in any persons. So your Fourth Amendment argument is a separate argument. Separate argument. But as to these regulations, what do we do with this regulation that says, we don't intend to create enforceable rights? In other words, it's for the guidance of the Border Patrol. I think this regulation was enforced. Garcia Flores occurred in 1980. It enforced another provision of Regulation 287. Well, yes. It's already happened 2,020 years later. 27.12, according to the footnotes that I've got here, if you want to provide us with something different, I've got, looks like it couldn't be any earlier than either 1994 or 1987. I can't tell. I mean, Garcia Flores was decided in 1980. But I understand that Part 287 was in existence, but I'm not sure that Part 287.12 was in existence at the time that Garcia Lopez was decided. I'm not certain about that. Okay. Well, what would be the effect of a regulation that says, we don't intend to create any rights in any person? Now, that doesn't mean that the Border Patrol here wouldn't be a discipline. It's not creating a right. Right. But it does suggest that you can't rely on this to exclude evidence. I would assert that this does not create any right in a person. And this is a regulation intended to regulate the conduct of INS agents, not a new right for a person. Right. But if it's intended to govern INS agents, then why does your client get the benefit of it? You're not representing INS agents. The INS agents may be subject to discipline, but it's not clear then why the evidence has to be, why we have to exclude the evidence. Because when a federal regulation is violated in this manner, the result is that the INS agent's actions are invalidated. Well, all of this looks a little circular to me. I'll move on to the second regulation, 287.3a. This regulation asserts that an alien arrested without a warrant will be examined by an officer other than the arresting officer. Again, we have Yolanda Salazar, an INS agent. She arrested Fabiola Gastelum Lopez. She also interrogated Fabiola Gastelum Lopez. The regulation was broken. The same two-prong test applies here. Because the regulation was broken, the results of the arrest should be invalidated. Under the Garcia-Flores test, how does 287.3, what interest of the aliens is this regulation protecting? It's protecting, it goes to the voluntariness of their admissions. We don't have any kind of a comparable regulation in the Fourth Amendment area. This is not intuitive to me as to why this is an important right for the alien. Garcia-Flores actually addressed this very same regulation. It said that the regulation goes to the relevance of the voluntariness of the admissions. If the same officer arrests the alien and then continues to interrogate the alien, the alien may feel that they have no option but to continue talking. And here we did allege that any admissions were made under duress, therefore they were not voluntary. Counsel, your time is running down. It seems to me your strongest argument is the Fourth Amendment argument. Well, let's go straight to that one in that case. In the Fourth Amendment, the agents entered the petitioner's home without a warrant, consent, or exigent circumstances. Their entrance was egregious and fundamentally unfair. Fabula's affidavit and testimony set out the prima facie case for this. All it had to do was set out facts where an egregious entry could have been supported. An entrance is egregious where it was made in bad faith. It's made in bad faith where the immigration officers should have known that their entrance contraverted the Constitution. Here they simply went into a person's home. They didn't have a warrant. They set out no facts establishing circumstances where they obtained consent. And the immigration judge applied the wrong law. Where does that leave your client, assuming a Fourth Amendment violation and assuming under Lopez-Mendoza, Justice O'Connor's plurality opinion that the government relies on in the first two of our cases, which primarily discusses the exclusionary rule? As Justice O'Connor pointed out in that opinion, which really only said the exclusionary rule, we're not going to apply as to the question of whether or not the individual is an alien. Assume that you're successful on this Fourth Amendment claim. Where does that leave your client? Where does that leave my client? It leaves my client with the government's burden to prove that they're removable. And the government hasn't. The alien issue? Right. Is there really any dispute about that? It's the government's burden to prove that they're removable. I can't be a zealous representative for my client and make the government's case for them. The government hasn't proven that. Was there any evidence that the Border Patrol obtained in her home other than her oral statement that, yes, I'm the one you're looking for, I'm Fabiola, I'm from Mexico? No. All we have are her answers to questions which they could have asked in any situation which she would have been obligated to answer. INS agents entered their home and asked them questions, and only their answers to the questions are the evidence.  If they had been approached on the street, it would have been a different scenario. Or even at the door. Or even outside the door, or at the door. But the Fourth Amendment draws a firm line at entrance to the home. There's a post-Lopez-Mendoza Ninth Circuit holding that says that the purpose of the exclusionary rule also is to provide judicial sanctions, and probative evidence cannot outweigh the need for judicial sanctions. Okay. What marginal difference is there between the situation in which the Border Patrol says at the door, are you Fabiola, are you a U.S. citizen, and where the INS agents push open the door, the Border Patrol push open the door, walk in, and then ask her the same questions? The Fourth Amendment draws a firm line at the entrance to the door, and that is not the facts of this case. But what additional, what's the value added from the Fourth Amendment violation? The home is sacred. If you didn't need a warrant to enter a home and interrogate people, and then you could say just because we asked people questions, therefore they're likely to flee, and we can arrest them without a warrant, you would never need a warrant at all. Do your clients have a potential Bivens action against the agents? No. And why not? I'm not certain. I'd like to reserve the remaining 30 seconds of my time. Okay. Thank you, counsel. Ms. Park. Good morning, Your Honors. My name is Long Park. On behalf of the Attorney General, Michael Mukasey, may it please the Court. Counsel, your brief makes no mention of 287.12. That is correct, Your Honor. Are you waiving that issue? No, Your Honor. To the extent that 287.12 would indicate that there is no rights created by the violation of the regulation cited by Petitioner's brief, that would apply, Your Honor, regardless of whether it had been mentioned in our brief or not. So to the extent the government indicates the regulations create no right for the violation of these regulations, that would be the case. Well, if you have a regulation saying you you need a warrant to get into a house to arrest somebody. Can you have a regulation like that and then say, but but this doesn't just although this regulation has the force of law and requires a warrant, nobody can enforce it. I mean, I guess I should ask, for whose benefit is a warrant required? Arguably, I think the benefit would be to protect the interests of the alien. However, both the statute, the INA, as well as the regulations cited, make a clear exception that immigration officers have the ability to go and pursue an investigation of where there may be illegal acts being conducted. And during the course of that investigation, if there is reason to believe that the alien, the person they are interviewing is in the United States in violation of law, then they can go ahead and arrest that person without having a warrant present. And that's both the statutory and regulatory provision that's given. And in this case, that is exactly what happened here. The officers went to the Petitioner's home based on a tip that they had been given that someone in that house was using a fraudulent United States citizen birth certificate. And acting on that tip, they went to this house to investigate. And during the course of that investigation discovery, there were at least two people, both Petitioners here who were present in violation of law. Well, there's no question, yeah. They might have had a probable cause and they could have gotten a warrant easily. But the only testimony, because the agents never showed up for the hearing, the only testimony is that they pushed open the door and walked in. They don't have that authority even if they have probable cause, do they? Well, whether consent was given or not is actually a factual dispute in this case. Well, you're not arguing consent was given, are you? Well, the Form 213 indicates, according to the agents, that they believed consent had been given for them to be able to enter the house. The Petitioner, Fabiola, here, testified in court that she did not believe that they gave consent. What was the I.J.'s finding on that? I think the I.J. determined in this case that there was not an egregious act for the agents who had entered into the house. My question was as to consent. I'm not sure that the I.J. necessarily made a specific finding with respect to consent actually being given or not. But even if consent had not been given in this case, the immigration judge found that the officer of conduct here was not so egregious as to rise to the level where probative evidence would have to be excluded. And certainly the 213, as this Court has found, is a reliable document, generally a reliable document that is very probative of alienation. Yeah, I'm looking at page 51 of the transcript, which is 162 of the excerpts of record. Given the circumstances, and even though the Court believes that there were some Fourth Amendment problems with the manner of entering and questioning, that doesn't sound like he found consent. No, but that also doesn't believe, I don't believe that it necessarily implies that he found consent or non-consent, one way or the other. I think there was some question. But we don't have Fourth Amendment problems if we have consent. Well, I think I don't think it's so egregious as to fall under the fundamentally unfair line of cases. But that's a pretty far, that's a, to say that you didn't engage in egregious behavior doesn't mean that you haven't engaged in wrongful behavior. Well, even if the Court were to find that consent, in fact, was not given, there is, the immigration judge did find that that act by the officers in this case didn't rise to the level where it would need to result in the preclusion of the evidence in question. So this Court, in fact, has held that mere, just having a Fourth Amendment violation in and of itself is not sufficient, per se, to exclude evidence. In addition to the fact that Well, but that's strictly on the alien age question, is it not? What case are you relying on? It's the Orahage v. INS 38, F. 3rd, 488, that was discussed in both briefs. And in that case, there was, the fact that Are you suggesting that the basic Bill of Rights don't apply to aliens? No, Your Honor. But with, because the Supreme Court has held that the Well, but the exclusionary, the one Supreme Court exclusionary decision, Lopez Justice O'Connor's opinion, that said, questioning a person as to their alien age in and of itself is not so egregious as to warrant the invocation of the exclusionary rule, recognizing that the Bill of Rights applies to us all, alien or not, in this country. That's correct. But in that case, Justice O'Connor also recognized all of these other competing interests, including cost, the streamlined immigration proceedings as they are currently set up, all of these other questions that must be weighed against But that was a limited decision. That case was strictly the question of interrogating someone as to their alien age as opposed to going into their home without a warrant. I think that case can certainly be read to, a little broader, to include where there's a Fourth Amendment violation, should the exclusionary rule apply. And I think that court, as well as this court in the Orohahe case, indicated that, yes, there can be a, if there is a Fourth Amendment violation, of course it is problematic, but that beyond that, the court has to weigh, and the agency certainly has to weigh, whether the egregiousness of the conduct that's in question outweighs the probative value of the evidence that's seeking to be excluded. Counsel, is there anything in the record to suggest that these agents have been disciplined? Not in the record, no, Your Honor. Do the petitioners here have a potential Bivens Act against the agents? I don't think so, but I'm not 100 percent sure about that. But why don't you think so? Because in this case, the agents came to the house acting on what turned out to be a reliable tip. There was, in fact, somebody in the house who was using a fraudulent U.S. Citizen Board certificate. There was no indication, as there was in both the Orohahe case as well as the Supreme Court case, of threatening actions by the agents when they came to the door. There was no weapons that were brandished or suggestion that these agents were armed. They didn't act in an authoritative manner. Your answer on the Bivens question then suggests that you think that they may have qualified immunity, not that they haven't committed a violation of the Fourth Amendment. Perhaps, Your Honor. I don't want to speak definitively to that issue. But I think the government's position is that there probably is not a Bivens action here, actionable facts here, and that if the Court would like for me to follow up with that, I would certainly be happy to do so. Moreover, with respect to the claims of the regulatory violations, I just want to mention very quickly that, in fact, those issues were not exhausted before the agency, as the issue of the same agent being both the arresting agent as well as the later interrogating agent were not raised to the Board. And so that was not an issue that the Board could have addressed in the first instance. The petitioners did not exhaust that issue. And further, with respect to the actual alienage of the petitioners in question here, I think there's no dispute that the aliens are here in violation of law, that they don't have any form of relief to which they are entitled. And the reliability of the 213 document and the attached, certainly with attached transcript indicating her answers to the agent's questions certainly indicate, with respect to Fabiola, that she is here in violation of law. And there's been, aside from the consent question regarding the manner of entry by the aliens. What does that have to do with the Fourth Amendment? It doesn't, Your Honor. But with respect to the petitioner's claim regarding their inability to be able to cross-examine the officers because they didn't appear, that would only, that right would only become implicated here if there were some kind of inherent unreliability as to the contents, the material contents of the 213. And that certainly is not the case, as the petitioner herself has indicated and signed a document saying, I am here in violation of law and acknowledging her alienage. In their notice of appeal to the BIA, they said that the agents entered without a warrant. Doesn't that raise the regulation as well as the Fourth Amendment? Well, that's fairly broad, Your Honor. Just to say that some act occurred in violation of regulation, I don't believe 287.3 was in fact cited anywhere. I mean, if I file a notice of appeal saying agents came and they broke into my house and I forget to mention the Fourth Amendment or I forget to mention the regulation, isn't that notice of appeal enough to keep my issue alive? Can't I then go to the board and argue the Fourth Amendment or the regulation? No, Your Honor, because this Court has held that a specific issue has to be raised to the board in order for it to be considered exhausted. I think it would be insufficient to say, to generally say that I contest the findings of the immigration judge. And in any event, in this case, there is both a statutory and regulatory provision that allows an officer, an immigration officer, to arrest without a warrant. Well, they can arrest without a warrant out on the street. There's no problem there. But I think the fact that there was sort of a general illusion that this arrest had occurred without a warrant is not specific enough to then, before the Court in Petitioner's opening brief, go into the specific regulations that had been the manners in which these regulatory violations had been. Well, it's a notice of appeal. I don't know how much you have to put in a notice of appeal. Well, Petitioner's also filed a brief before the board, so certainly they could have gone into more specifics there, but they didn't do so. So that was a second opportunity in which they could have specifically raised these issues to the board, but they did not. I see that my time is up, Your Honor. Thank you, Counsel. Counsel, you raised the exhaustion question, but you really didn't, beyond that, argue the merits of the regulation question in your brief, as I understand it. Correct, Your Honor. Okay. If it's exhausted, are you conceding those? Again, no, Your Honor. The government's position is that these issues could have been raised and were not, and the Court simply doesn't have jurisdiction to take a look at these issues. But, again, I believe the remainder of the brief that discusses, albeit within the context of Fourth Amendment violation, I think those indicate to the Court that the government's position is that the agent's actions here were not egregious or rising to an impropriety that requires exclusion of the evidence generally. So I would ask that the petition be denied. Thank you, Your Honor. Thank you. Ms. O'Connell. Thank you. Briefly, I'd just like to say that, yes, if facts are raised below, then the regulation claim was raised. There's a 2005 Ninth Circuit case, Thomas v. Gonzalez, holding this. Certainly the issue of illegal entry was raised in the brief to the BIA. And, second, the Fourth Amendment violation was egregious. There is a 1990 Ninth Circuit case, Scibo, which held that agents cannot simply follow a person through an open door and deem that implied consent. They need to make a specific request or they need to be affirmatively invited in. In this case, they were not. The agents should have known that because of this 1990 case. Because they should have known that, it was an egregious entry. And, lastly, I'd just like to touch on our Fifth Amendment due process claim. The women offered probative evidence contradicting the substance of the I-213 statements. That gave them the right to cross-examine the authors of the statements. They were denied that right, which rendered their hearing fundamentally unfair. There's a 1995 Ninth Circuit case, Navarrete, saying that this Fifth Amendment due process right, if violated, can result in the suppression of evidence in a civil deportation hearing. That applies here. Thank you, counsel. We thank both counsel for the argument. Lopez v. Rodriguez is submitted. The next case on the calendar is Robles-Martinez v. Mukasey.
judges: Canby, Bybee, Quackenbush